IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00667-CMA-BNB

SHIRLEY A. CERONI,

Plaintiff,

v.

4FRONT ENGINEERED SOLUTIONS, INC.,

Defendant.
_____

**ORDER**
_____

This matter arises on **Defendant 4Front Engineered Solutions, Inc.'s Motion to Compel Discovery from the United States Postal Service** [Doc. # 21, filed 4/18/2011] (the "Motion to Compel"). I held a hearing on the Motion to Compel on May 6, 2011, and took it under advisement. After review, the Motion to Compel is GRANTED.

This is a product liability action brought in federal court between private parties. Discovery is sought from the United States Postal Service ("USPS"), which is not a party to the suit.

The plaintiff is a "long term" employee of the USPS. She alleges that she suffered a work-place injury as the result of a malfunction of a "dock leveler" used to bridge the gap between the USPS loading dock and a freight trailer. The accident occurred at Dock Bay # 95 at the Denver General Mail Facility. Another USPS worker, Patty Fox, witnessed the accident and is alleged by the defendant to have caused or contributed to the cause of the accident. A third USPS employee, Gerard Delgado, completed the USPS Accident Report form and related

paperwork, which reported that there was "no hazardous condition/equipment on hand" and that the accident was caused by "inattention."

The defendant, manufacturer of the dock leveler, sought the permission of the USPS to inspect the accident site and to depose Fox and Delgado. Permission was refused. Subsequently, the defendant served testimonial subpoenas on Fox and Delgado; a records subpoena on the Records Custodian, Denver General Mail Facility; and a subpoena to inspect Dock Bay # 95 on the District Manager, Denver General Mail Facility.

## I.  Touhy Objection

The USPS served a written objection to the subpoenas which states in relevant part:

> As you know, on November 17, 2010, the Postal Service denied your August 26, 2010 request to inspect equipment located at the United States Postal Service General Mail Facility . . . under federal regulation 39 CFR § 265.12 and United States ex rel. Touhy v. Ragan, 340 U.S. 462 (1951); Moore v. Armour Pharmaceutical, 927 F.2d 1194 (11th Cir. 1991); and Boron Oil Co. v. Downie, 873 F.2d 67 (4th Cir. 1989). . . .
>
> Equally and uniformly, the same analysis applies to your subpoenas as was applied to my response to your August 26, 2010 request. Accordingly, pursuant to 39 CFR § 265.12 and United States ex rel. Touhy v. Ragan, 340 U.S. 462 (1951), the Postal Service Law Department has determined your requests are contrary to the interest of the U.S. Postal Service. As such, the Postal Service respectfully objects to your subpoenas and declines to produce the identified documents and Postal employee. Furthermore, the Postal Service denies your request to permit inspection of the South Dock, Bay 95 of the Denver General Mail Facility. . . .

USPS Written Objection to Subpoenas [Doc. # 21-3] (the "Written Objection").

The defendant has moved to compel compliance with the subpoenas. Consistent with its Written Objection, the USPS argues that it is relieved from the duty to comply with the

subpoenas by federal regulation[1] and United States ex rel. Touhy v. Ragan, 340 U.S. 462 (1951).

The regulation relied on by the USPS is contained at 39 C.F.R. §265.12(d), and states:

> (d) Procedures followed in response to a demand for testimony or records.
>
> (1) After an employee receives a demand for testimony or records, the employee shall immediately notify the General Counsel [of the United States Postal Service] or Chief Field Counsel and request instructions.
>
> (2) An employee may not give testimony or produce records without the prior authorization of the General Counsel.
>
> (3)(I) The General Counsel may allow an employee to testify or produce records if the General Counsel determines that granting permission:
>
> (A) Would be appropriate under the rules of procedure governing the matter in which the demand arises and other applicable laws, privileges, rules, authority, and regulations; and
>
> (B) Would not be contrary to the interest of the United States. The interest of the United States includes, but is not limited to, furthering a public interest of the Postal Service and protecting the human and financial resources of the United States.
>
> \* \* \*
>
> (6) If the court or other authority declines the request for a stay, or rules that the employee must comply with the demand regardless of the General Counsel's instructions, the employee or counsel for the employee shall respectfully decline to comply with the demand, citing United States ex rel. Touhy v. Ragan, 340 U.S. 462 (1951), and the regulations in this section.

In Touhy, a subpoena duces tecum was served on Mr. McSwain, a subordinate official of the United States Department of Justice, ordering the production of Justice Department papers in

---

[1] Section 301, 5 U.S.C., authorizes the head of an executive department to place limits on how employees can disseminate information gained in the performance of their official duties. See, e.g., Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1196-97 (11th Cir. 1991).

his possession. The subpoena was also addressed to the Attorney General of the United States, but he was not personally served.

Pursuant to Order No. 3229 issued by the Attorney General:

> Whenever an officer or employee of the Department is served with a subpoena duces tecum to produce any official files, documents, records or information he should at once inform his superior officer of the requirement of the subpoena and ask for instructions from the Attorney General. If, in the opinion of the Attorney General, circumstances or conditions make it necessary to decline in the interest of public policy to furnish the information, the officer or employee on whom the subpoena is served will appear in court in answer thereto and courteously state to the court that he has consulted the Department of Justice and is acting in accordance with instructions of the Attorney General in refusing to produce the records.

Touhy, 340 U.S. at 463 n. 1 (quoting Department of Justice Order No. 3229, filed May 2, 1946, 11 Fed. Reg. 4920).

The Attorney General declined to comply with the command of the subpoena and instructed Mr. McSwain accordingly. Mr. McSwain followed the instructions of the Attorney General and declined to produce the records, stating: "I must respectfully advise the Court that under instructions to me by the Attorney General that I must respectfully decline to produce them, in accordance with Department Rule No. 3229." Id. at 465. The trial court found Mr. McSwain guilty of contempt; the Seventh Circuit Court of Appeals reversed; and the Supreme Court granted certiorari review.

In affirming the circuit court's decision, the Supreme Court held that Order No. 3229 was valid, reasoning:

> When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the

>       necessity, of centralizing determination as to whether subpoenas
>       duces tecum will be willingly obeyed or challenged is obvious.

Id. at 468.

The Touhy majority was careful to point out, however, that the "Attorney General was not before the trial court," only his subordinate was, and that the issue it decided was limited to the authority of the Attorney General to withdraw from his subordinates the power to release Justice Department documents. Id. at 467. Justice Frankfurter, concurring, made the point even more clear, noting that "whether, when and how the Attorney General himself can be granted immunity from the duty to disclose information contained in documents within his possession that are relevant to a judicial proceeding are matters not here for adjudication" and that "[i]n joining the Court's opinion I assume . . . that the Attorney General can be reached by legal process." Id. at 472 (Frankfurter, J., concurring).

Touhy thus stands for two unremarkable propositions: (1) the Attorney General may by regulation or order withdraw from his subordinates and consolidate in himself the authority to release Justice Department documents;[2] and (2) the issue of the propriety of the Attorney General's decision not to release the documents was not properly presented for determination because the party with the sole authority to decide the matter, the Attorney General, had not been

---

[2] In concluding that the Attorney General could reserve to himself the exclusive authority to release Departmental documents, the Supreme Court relied on its decision in Boske v. Comingore, 177 U.S. 459, 470 (1900). In Boske the Court held that the Secretary of the Treasury may by regulation "take from a subordinate . . . all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character." Id. at 470.

personally served with the subpoena and was not before the district court.[3]

The USPS relies heavily on two decisions of the Tenth Circuit Court of Appeals--Saunders v. Great Western Sugar Co., 396 F.2d 794 (10th Cir. 1968), and United States Steel Corp. v. Mattingly, 663 F.2d 68 (10th Cir. 1980)--in its argument that it is not required to comply with the subpoenas.

In Saunders the Small Business Administration appealed a trial court's order compelling it to respond to subpoenas duces tecum issued in connection with a lawsuit between private parties. There, the applicable regulation prohibited agency employees from producing documents "without authorization from the Assistant Administrator for Administration," and the opinion states that "such authorization has been withheld ." Id. at 794. The circuit court begrudgingly reversed the trial court's order compelling disclosure, stating:

> The requirement on litigants to proceed only in the District of
> Columbia to obtain relief from agency action denying disclosure is
> a hardship. We see no reason why the claim of governmental
> privilege may not be determined as satisfactorily in a federal court
> removed from the District of Columbia as in a court that is there
> located. Be that as it may, the congressional action in granting
> jurisdiction over federal officials in the district courts in civil
> actions, 28 U.S.C. §§ 1361, 1391(e), has not been extended to
> situations such as we have before us. We are bound by Touhy and
> Boske.
> 
> \* \* \*
> 
> We interrogated at length the attorney for the government whether
> the proper SBA official, if subpoenaed in the District of Columbia,
> would defend on any ground other than privilege and received the
> positive assurance that he would not. . . . We assume that the
> proper SBA official in the District of Columbia can be reached by
> legal process and that the claim of privilege can be promptly

---

[3]See Robbins v. Wilkie, 289 F. Supp. 2d 1307, 1310 (D. Wyo. 2003)(noting that "Touhy stands for the limited principle that Mr. Touhy should have served a subpoena on the proper party").

>    determined there.

Id. at 795.

Saunders, like Touhy, stands for the propositions that (1) a governmental agency can consolidate in a high official the sole authority to release agency documents pursuant to a private subpoena, and (2) a challenge to the official's decision not to release the documents must be brought in a court where that official has been served with a subpoena and is amenable to a motion to compel.  The circuit court's statement that district courts outside the District of Columbia lack jurisdiction in "situations such as we have before us" is a recognition that in that case the Assistant Administrator for Administration with authority to decide whether to release the documents could be found in Washington, D.C.; that a subpoena directed to the Assistant Administrator must issue from the United States District Court for the District of Columbia; and that under Rule 45(c)(2)(B)(I), Fed. R. Civ. P., "[a]t any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection."

In Mattingly, 663 F.3d at 68, the circuit court cited Touhy and Saunders and again reversed an order of the trial court compelling a subordinate government agent to testify and produce documents in response to a subpoena issued in a private action to which the government was not a party.  The circuit court's opinion in Mattingly is exceedingly terse, and it is necessary to look to the district court's order to give the appellate decision context.

Mattingly involved a subpoena served on an employee (Christ) of the National Bureau of Standards (the "NBS"), an agency of the federal government, commanding him to testify and produce records in connection with a private civil action pending in a federal district court in

Kentucky. U.S. Steel Corp. v. Mattingly, 89 F.R.D. 301, 302 (D. Colo. 1980). The subpoena was issued by the United States District Court for the District of Colorado because that is where Christ could be found.

In ruling on the motion to compel, the trial judge noted that "[w]ere it not for Christ's status as an employee of NBS he would unquestionably be subject to the same rule of law that governs other mortals and would not be heard to refuse to testify to facts and opinions within his ken." Id. As in Touhy and Saunders, however, the agency had promulgated regulations concerning the circumstances under which subordinate employees could comply with subpoenas. The applicable regulation stated:

> [NBS] employees shall not testify nor otherwise appear in legal proceedings not involving the United States or its officers or employees in their official capacity as a named party in order to produce data, information, or records which concern matters related to official duties of NBS employees or the functions of NBS.

Id. at 303 (quoting 15 C.F.R. § 275.1(c) (1979)). The written authorization of the "NBS Legal Advisor" was required before a subordinate employee, like Christ, could produce documents or testify pursuant to legal process. Id. (citing 15 C.F.R. §275.2 (1979)).

Given this context, Mattingly must be read no more broadly than Touhy and Saunders, upon which it relies, to mean that the subpoena was required to be served on the NBS Legal Advisor to challenge his or her decision precluding Christ's compliance, and the motion to compel must be brought in the district where the Legal Advisor was served with process.

Significantly, Mattingly is unlike Touhy and Saunders in that it concerns a subpoena requiring both the production of documents and testimony of the subordinate employee. The circuit court did not pause to address the distinction, but it is important. Rule 45(c)(2)(B), Fed.

R. Civ. P., allows a person commanded by a subpoena to produce documents or allow inspection of premises to serve a written objection. Service of an objection relieves the subpoenaed party from any further responsibility to comply with the subpoena, and the subpoenaing party must move in the court issuing the subpoena for an order compelling production or inspection. No similar procedure for serving a written objection exists with respect to testimonial subpoenas. Instead, Rule 45(c)(3), Fed. R. Civ. P., requires the subpoenaed party to file in the issuing court a motion to quash or modify the subpoena.

Applying the controlling precedent to the facts of this case leads to a mixed result. It appears beyond dispute that the USPS may, consistent with Boske and Touhy, remove from the authority of subordinate officers and consolidate under the authority of its General Counsel the decision about whether to produce documents or allow testimony. The USPS has exercised that authority through 39 C.F.R. § 265.12(d). There is no indication, however, that the USPS has similarly attempted to remove from its subordinate officers the obligation to comply with subpoenas for the inspection of premises under Rule 45(a)(1)(A)(iii).

First, with respect to the subpoena to produce documents served on the Custodian of Records, the USPS appropriately invoked the procedures of Rule 45(c)(2)(B) and served a written objection. Under Touhy and Saunders, the defendant may challenge the decision of the General Counsel only by serving him or her personally with the subpoena and moving to compel in the district where the General Counsel is found and served.[4]

Second, with respect to the testimonial depositions served on Fox and Delgado, the USPS

---

[4] In an apparent concession of the point, and as the USPS points out in its Response [Doc. # 28] at page 3, the defendant has not moved to compel with respect to the subpoena to produce documents.

must move in the issuing court for an order to quash or modify the subpoena.  See Fed. R. Civ. P. 45(c)(3).  Consequently, to challenge the testimonial subpoenas, the General Counsel must intervene in this action and move to quash or modify, but has not done so.  See, e.g., Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1196 (11th Cir. 1991)(concerning a testimonial subpoena and noting that the Secretary of the United States Department of Health and Human Services "filed a motion to quash, or alternatively, for a protective order on behalf of [the subordinate officer"].  The Federal Rules of Civil Procedure do not recognize the procedure of serving a written objection in connection with a testimonial subpoena.

Finally, with respect to the subpoena to inspect premises, the USPS has not by regulation or otherwise addressed consolidation of the authority to comply.  Yousuf v. Samantar, 451 F.3d 248, (D.C. Cir. 2006)(noting that "the Government has no 'established prerogative' not to respond when subpoenaed").  The USPS filed a written objection, however, as permitted by Rule 45(c)(2)(B).  The defendant has responded to the written objection by filing a motion to compel in the issuing court, as required by Rule 45(c)(2)(B)(I).

## II.  Sovereign Immunity

The USPS also invokes the doctrine of sovereign immunity and argues, without citation to authority, that "a civil litigant seeking discovery from a federal employee must file an independent APA action."  Response [Doc. # 4] at p. 4.

It certainly is true that a litigant in state court who has been denied discovery by a federal agency pursuant to a regulation promulgated under 5 U.S.C. § 301 and who seeks to compel discovery pursuant to a state court subpoena must commence a collateral action in federal court under the APA to challenge the agency's decision.  As the court explained in Houston Business

10

Journal, Inc. v. Office of the Comptroller, 86 F.3d 1208 (D.C. Cir. 1996):

> When a litigant seeks to obtain documents from a non-party federal governmental agency, the procedure varies depending on whether the underlying litigation is in federal or in state court. In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena. . . . Thus, a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations. . . . If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA.

Id. at 1211-12. Accord In re Criminal Subpoena Duces Tecum, 162 F.3d 1172 *1 (10th Cir. 1998)(unpublished) (noting that the remedy where a subordinate federal agent refuses to comply with a state court subpoena issued in connection with state court proceedings is to file an action in federal court pursuant to the Administrative Procedures Act).

Where as here, however, a federal court is asked to enforce its own subpoena issued in connection with a federal proceeding, no such requirement exists. The federal government has waived its sovereign immunity. Houston Business Journal, 86 F.3d at 1212. Consequently, the proper procedure is for the federal court, on the filing of a motion to compel or for protective order, to review the discovery dispute in the pending action.

For example, in each of the following cases the discovery dispute was heard and determined in the underlying federal action and no independent, collateral action under the APA was required to be commenced: Watts v. Securities and Exchange Comm., 482 F.3d 501, 508 (D.C. Cir. 2007)(stating that "an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel (or an agency's Rule 45 motion to quash")); Linder v. Calero-Portocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001)(holding that the waiver of sovereign immunity contained in the Administrative Procedures

11

Act (5 U.S.C. § 702) is not limited to actions brought under that APA (5 U.S.C. § 706)); <u>United States Environmental Protection Agency v. General Electric</u>, 197 F.3d 592, 599 (2d Cir. 1999)(stating that "the APA allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance"); <u>Moore</u>, 927 F.2d at 1196 (reviewing <u>Touhy</u> issue in connection with a motion to quash subpoena decided in the underlying action and not requiring a separate APA action to be commenced); and <u>Johnson v. Folino</u>, 528 F. Supp. 2d 548, (E.D. Penn. 2007)(holding that "[t]he court has jurisdiction to determine this discovery dispute; petitioner need not file an ancillary proceeding under the APA").

The reliance of the USPS on <u>COMSAT Corp. v. National Science Foundation</u>, 190 F.3d 269 (4th Cir. 1999), for a different rule is not persuasive. In <u>COMSAT</u>, an arbitrator in an arbitration governed by the Federal Arbitration Act issued subpoenas for testimony and production of documents to a subordinate employee of the National Science Foundation, a governmental agency. The Agency declined to allow the testimony or disclosure of documents. COMSAT then commenced an action under the APA in the Eastern District of Virginia, where the arbitration was pending, and sought an order compelling compliance with the subpoenas. On review of the district court's order granting the motion to compel, the circuit court stated:

> The APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions. . . . As the Supreme Court has instructed, an agency action may be considered "final" only when the action signals the consummation of an agency's decisionmaking process *and* gives rise to legal rights or consequences. A reviewing court may set aside a final agency action when the action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

<u>Id</u>. at 274.

It is clear that the COMSAT court conducted its review under the arbitrary and capricious standard mandated by the APA. However, COMSAT does not stand for the proposition that an independent and ancillary proceeding must be brought separately from an underlying federal action to enforce a subpoena where a Touhy objection has been asserted. To the contrary, there was no underlying federal action pending in the COMSAT case at the time the subpoenas were issued--the matter was in arbitration. In this regard, COMSAT resembles the state-court actions discussed in Houston Business Journal, 86 F.3d at 1211-12. A federal action had to be commenced to challenge the Touhy objection because there was no underlying federal action in which to bring a discovery motion.

### III. Standard of Review

A split of authority exists concerning the standard to be applied by the federal court in deciding the discovery dispute.[5] In Exxon Shipping Co. v. Dept. of Interior, 34 F.3d 774 (9th Cir. 1994), the Ninth Circuit Court of Appeals noted the efficiency of allowing the review of a Touhy objection to occur in the underlying federal action, id. at 780 n.11, and applied the standards for resolving discovery disputes articulated by the Federal Rules of Civil Procedure and not the arbitrary and capricious standard of the APA. In particular, the court stated:

> We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the government's concerns under the

---

[5]See Johnson, 528 F. Supp. at 551, stating: "The Fourth and Eleventh Circuits review the agency's decision under the APA's arbitrary and capricious standard. . . . On the other hand, the D.C. and Ninth Circuits conduct an analysis under Federal Rule of Civil Procedure 45. . . . The Second Circuit initially adopted the arbitrary and capricious standard, but, on reconsideration, vacated it decision and reserved the question for the future."

>general rules of discovery. The Federal Rules of Civil Procedure
>explicitly provide for limitations on discovery in cases such as this.
>Rule 26(c) and Rule 45(c)(3) give ample discretion to district
>courts to quash or modify subpoenas causing "undue burden." The
>Federal Rules also afford nonparties special protection against the
>time and expense of complying with subpoenas.

Id. at 779.

By contrast, in COMSAT the Fourth Circuit expressly rejected the reasoning of the Exxon court and held that the agency's refusal to comply with a subpoena must be measured against the arbitrary and capricious standard of the APA:

>The Ninth Circuit's Exxon decision abrogates the doctrine of
>sovereign immunity to a significant degree. Although the decision
>acknowledges the APA as the source of the congressional waiver
>of sovereign immunity permitting review of a non-party agency's
>refusal to comply with a subpoena, Exxon overlooks an important
>limitation upon this waiver: courts may reverse an agency's
>decision not to comply only when the agency has acted
>unreasonably.

COMSAT, 190 F.3d at 277 (internal citation omitted).

I am not aware of any decision of the Tenth Circuit Court of Appeals deciding the issue of the appropriate standard of review, and the parties have not directed me to any. In Robbins v. Wilkie, 289 F. Supp. 2d at 1311, the court in the District of Wyoming applied the discovery rules in resolving a Touhy objection, stating:

>The discovery powers under the Federal Rules of Civil Procedure
>provide parties with avenues of gaining discoverable evidence. . .
>The government can not promulgate regulations and refuse proper,
>necessary discovery in direct contravention with the Federal Rules
>of Civil Procedure.

### IV. Application of the Law to These Facts

The Motion to Compel, limited as it is to the testimonial subpoenas and the subpoena to

inspect premises, is properly before me for determination pursuant to Fed. R. Civ. P. 45(c)(2)(B)(I) and (c)(3). Moreover, where as here there is an underlying federal action and the subpoenas in dispute were issued in connection with that underlying action, the defendant is not required to file a separate and ancillary APA lawsuit to resolve the discovery dispute.

Out of an abundance of caution, and without attempting to decide the proper standard, I will apply the APA arbitrary and capricious standard. Even under that exacting test, I find that the decision of the USPS not to comply with the subpoenas commanding testimony and inspection of the premises was unjustified and that the discovery should be compelled.[6]

The information sought by the subpoenas is relevant to the issues raised in the underlying action and is discoverable. The USPS does not assert that the requested information is subject to any privilege.

The burden on USPS employees and the disruption to postal operations required for compliance with the subpoenas is minimal. The testimonial subpoenas call for two depositions, each limited to three hours. Motion to Compel [Doc. # 21] at p. 22. The subpoena to inspect premises seeks "90 minutes access to the GMF to inspect the accident site." Id. The defendant represents that it will take further steps to minimize the burden and disruption, including "scheduling the depositions outside the employees' normal work hours," id. at 23, and conducting the inspection "in a way that minimizes the disruption to the USPS." Id. at 18. The

---

[6]I decline the request of the USPS to allow it to file a declaration in further support of its decision. See Response [Doc. # 28] at p. 14. The USPS refused the defendant's request for information in a written Letter [Doc. # 21-2]; made its Written Objection to the subpoenas [Doc. # 21-3]; and was allowed to file a Response to the Motion to Compel containing all arguments and evidence it believed necessary. The declaration contemplated by the request for further submissions should have been provided previously, and no adequate explanation is offered for the failure to do so.

evidence before me indicates that the USPS conducts maintenance on dock levelers and loading docks which requires that they be taken out of service periodically. See Deposition of Shirley A. Ceroni [Doc. # 21-6] at p. 90 lines 7-14; handwritten statement of Patty Fox [Doc. # 21-7] at p. 10 of 21.

Although 39 C.F.R. § 265.12(d)(3)(I) provides that the decision about whether to comply with a subpoena will be made by the USPS General Counsel, the decision not to comply with the subpoenas is contained in letters from Amy J. Costello, Western Area Law Department, United States Postal Service. Letter [Doc. # 21-1] and Written Objection [Doc. # 21-3]. In the first Letter, Ms. Costello states that the defendant's request for information "has been forwarded to our office [the Western Area Law Department] for review and determination." Letter [Doc. # 21-2]. In the Written Objection, Ms. Costello states that "the Postal Service Law Department has determined your requests are contrary to the interest of the U.S. Postal Service." Written Objection [Doc. # 21-3]. Neither document makes any reference to the matter being reviewed by the USPS General Counsel or that the decision not to comply with the subpoenas was made by the General Counsel.[7]

Substantively, the response of the USPS is composed solely of boilerplate objections, devoid of any individualized factual analysis. The most particular statement by the USPS is that the defendant has "fail[ed] to specify why the information sought is unavailable by any other means"; that "allowing disruption to postal operations and taking essential personnel away from

---

[7]The term "General Counsel" is defined in the regulation to include "the General Counsel of the United States Postal Service, the Chief Field Counsels, or an employee of the Postal Service acting for the General Counsel under a delegation of authority." 39 C.F.R. § 265.12(b)(4). Even under this expanded definition, there is no evidence that the decision of the USPS was made by an appropriate authority.

16

their official duties would be contrary to furthering a public interest of the Postal Service and protecting the human and financial resources of the United Stated": and that 39 C.F.R. 232.1(e) "prohibits any activities on postal property which "tends to impede or disturb public employees in the performance of their duties.'" Letter [Doc. # 21-2] (internal citations omitted except as noted). There is no analysis concerning the possibility that the depositions could occur before or after the deponents' normal working hours or on their scheduled days off. There is no analysis concerning the possibility of conducting the inspection of premises at a time when the dock is not in use or is out of service for maintenance. The suggestion that the evidence is available through some other source is unsupported and obviously incorrect--it is possible to inspect the site of an accident only by an inspection, and witness testimony can only be obtained at a deposition or trial through a subpoena.

In addition, the subpoenaed information is crucial for the trial court to adjudicate fairly the rights of the parties in the underlying action.

The decision of the USPS not to comply with this court's subpoenas does not appear to have been made by the USPS General Counsel or other appropriate authority, as the regulation requires. Regardless of who made the decision, it is arbitrary, capricious, and an abuse of discretion.

IT IS ORDERED:

(1) The Motion to Compel [Doc. # 21] is GRANTED;

(2) Patty Fox and Gerard Delgado shall appear for their depositions and testify at a date and time as the parties, witnesses, and the USPS may agree, but not later than **July 8, 2011**. Each deposition shall last no longer than three hours; and

(3)     The District Manager of the Denver General Mail Facility of the United States Postal Service shall make the premises described as the Denver General Mail Facility, South Dock, Bay 95, 7540 E. 53rd Place, Denver, Colorado, available for inspection, measurement, survey, and photograph at a date and time as the parties and the USPS may agree, but not later than **July 8, 2011.**

Dated June 3, 2011.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge