IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00667-BNB-KLM

SHIRLEY A. CERONI,

Plaintiff,

v.

4FRONT ENGINEERED SOLUTIONS, INC.,

Defendant.
_____

**ORDER**
_____

The defendant has moved for summary judgment on two grounds:

(1)     First, that the plaintiff cannot prove essential elements of her claims without supporting expert testimony, Motion for Summary Judgment [Doc. # 37, filed 10/31/2011] at p. 9; and

(2)     Second, that the plaintiff cannot establish the condition of the dock leveler at the time of the accident. Id.

For the reasons stated below, the defendant's **Motion for Summary Judgment** [Doc. # 37] is GRANTED IN PART and DENIED IN PART, as specified.

I.

The plaintiff is a "long term" employee of the United States Postal Service ("USPS"). Id. at p. 2. She alleges that on June 13, 2008, she suffered a work-place injury as the result of a malfunction of a "dock leveler" used to bridge the gap between the USPS loading dock and a freight trailer. Id. The accident occurred at Dock Bay # 95 at the Denver General Mail Facility

in Denver, Colorado. Id. According to the plaintiff, the right side of the dock leveler dropped "several inches," throwing the fork lift she was operating into the frame of the dock door. Deposition of Shirley A. Ceroni [Doc. # 37-4] (the "Ceroni Depo.") at p. 76 line 24 through p. 79 line 2.

The defendant manufactured the dock leveler. Motion for Summary Judgment [Doc. # 37] at p. 7.

The plaintiff asserts three claims: (1) "Product Liability for Negligence"; (2) "Product Liability Inadequate Warning or Instruction"; and (3) "Strict Product Liability." Final Pretrial Order [Doc. # 49] at p. 2.

Jurisdiction is based on diversity of citizenship. Consequently, the substantive law of Colorado governs the plaintiff's claims. Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016 (10th Cir. 2001). Federal law, however, controls the determination of the Motion for Summary Judgment. Id. at 1016-17. In order to obtain summary judgment, a defendant that does not bear the burden of persuasion at trial need not negate the plaintiff's claim. Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003). Instead, the defendant's burden may be met by showing that there is no evidence to support the plaintiff's case. Id. If this initial burden is met, the plaintiff must go beyond the pleadings and set forth specific facts that would be admissible at trial from which a rational trier of fact could find for the plaintiff. Id.

## II.

The defendant moves for summary judgment first arguing that "Colorado provides that 'expert testimony is required in negligence cases to establish the standard of care when the standard is outside the common knowledge and experience of ordinary persons.'" Motion for

Summary Judgment [Doc. # 37] at p. 10 (quoting Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc., 2010 WL 3777303 *5 (10th Cir. Sept. 19, 2010); accord Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 930 (Colo. 1997)(same). "Whether the standard is a matter of common knowledge is a determination committed to the sound discretion of the trial court," Oliver v. Amity Mutual Irrigation Co., 994 P.2d 495, 497 (Colo. App. 1999), and is "highly fact-dependent. . . ." Xtreme, 2010 WL 3777303 at *5.

There is no evidence in the record now before me from which to determine whether the standard of care applicable to the dock leveler is within the common knowledge of ordinary persons. The only information about the dock leveler is contained in the Complaint, which alleges that the plaintiff "was injured when the mechanical and/or hydraulic and/or air-powered and/or specialty dock leveler . . . failed while [p]laintiff was operating a forklift thereon." Complaint [Doc. # 2] at ¶32. There is no evidence or argument concerning the operation of the dock leveler or its complexity. In fact, there is no indication about whether the dock leveler operates mechanically, hydraulically, by air power, or otherwise. In the absence of any such evidence or information, I cannot determine whether the applicable standard of care is within the common knowledge of ordinary persons or whether expert testimony is necessary. Consequently, the Motion for Summary Judgement [Doc. # 37] is DENIED insofar as it is based on the plaintiff's failure to designate an expert witness on the issue of liability.

III.

The defendant also argues that summary judgment is appropriate because the plaintiff "cannot prove essential elements for each [claim] given . . . her inability to establish the condition of the dock leveler at the time of the accident." Motion for Summary Judgment [Doc.

# 37] at p. 9.

Plaintiff's Second Claim for Relief is captioned "Product Liability for Negligence." Complaint [Doc. # 2] at p. 7. The claim is supported by the allegation that "Defendant 4Front was negligent by failing to exercise reasonable care to prevent the subject dock leveler from creating an unreasonable risk of harm to the person of one who might reasonably be expected to use or be affected by the dock leveler while it was being used in the manner that Defendants might have reasonably expected." Id. at ¶69.

Plaintiff's Sixth Claim for Relief is captioned "Strict Product Liability." Complaint [Doc. # 2] at p. 12. The claim is supported by the following allegations:

> 121. Defendant 4Front designed, assembled, fabricated, produced, constructed, or otherwise prepared the dock leve[ler] that failed at Denver GMF, South Dock, Bay 95 on June 13, 2008.
> \* \* \*
> 125. The dock leveler Defendant 4Front sold or leased which was used by Plaintiff on or about June 13, 2008 was defective at the time that it was sold and/or left the control of Defendant 4Front.
>
> 126. Because of the defect in the dock leveler at the time that it left the control of Defendant 4Front, the dock leveler was unreasonably dangerous to a person who might reasonably be expected to use the dock leveler.
> \* \* \*
> 133. The defective and unreasonably dangerous condition of the subject dock leveler when it left the control of Defendant 4Front was the direct and proximate cause of Plaintiff's injuries, damages and losses described herein.

Complaint [Doc. # 2] at pp. 12-13.

As the pleadings make clear, the plaintiff asserts product liability claims sounding in both negligence and strict liability. Negligence and strict liability "are conceptually different theories of product liability." Perlmutter v. U.S. Gypsum Co., 54 F.3d 659, 663 (10th Cir.

1995)(applying Colorado law). "The difference between negligence and strict liability is the focus of the trier of fact. Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined. Under a strict liability theory, the determination is whether the product is defective, or, if not defective, unreasonably unsafe, and whether, under an objective standard, after weighing the relevant costs and benefits, a warning was required." Downing v. Overhead Door Corp., 707 P.2d 1027, 1032 (Colo. App. 1985). Accord Lui v. Barnhart, 987 P.2d 942, 944-45 (Colo. App. 1999)(explaining that "[s]trict liability in tort does not require proof of fault," while "[i]n contrast, negligence requires proof that a defendant's conduct falls below an acceptable standard of care").

"Negligence is not the logical equivalent of strict liability. Negligence requires proof that a defendant's conduct fell below an acceptable standard of care and thus involves proof of fault." Wallman v. Kelley, 976 P.2d 330, 333 (Colo. App. 1998). See CJI-Civ. 14:17 (2011) (stating as an element of Product Liability for Negligence that "[t]he defendant was negligent by failing to exercise reasonable care to prevent the [product] from creating an unreasonable risk of harm"). Strict product liability, by contrast, imposes liability on a defendant regardless of fault on proof that the product is "both defective and unreasonably dangerous." Fibreboard Corp. v. Fenton, 845 P.2d 1168, 1173 n. 10 (Colo. 1993). See CJI-Civ. 14:1 (2011)(stating as an element of Strict Product Liability that the product "was defective and, because of the defect, the [product] was unreasonably dangerous").

"Regardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective." Mile Hi Concrete v. Matz, 842 P.2d 198, 205 (Colo. 1992). In this case, the testimony of Patricia Fox and Gerard Delgado, both

Postal Service employees at the time of the accident, are relevant to the issue of defect. Ms. Fox testified at her deposition as follows:

> Q  Has anyone explained to you what they think happened with the ramp at the time of the accident?
>
> A  The day after, when--there was a group of people--there was the mail handler president, for the union, and then another union rep and Leigh Hettick, Gary Petit--let me think who else was out there. Jackie Seagrest, who was the MDO at the time.
>
> They all came out and were looking at it, and Gary got up under there, because I was holding it up, and says something-something-something had broken underneath.
>
> Q  Did you have any understanding what the "something-something" was?
>
> A  No, no.
>
> \*   \*   \*
>
> Q  But it is your clear understanding that Mr. Petit was able to identify something specifically that was broken and needed to be fixed?
>
> A  Yes.
>
> Q  It's just you are not sure what it is?
>
> A  No.
>
> Q  I made a true statement?
>
> A  Yes.

Deposition of Patricia Fox [Doc. # 37-6] ("Fox Depo.") at p. 49 line 7 through p. 50 line 12.

Similarly, Mr. Delgado testified:

> Q  Do you recall Mr. Smith following up with you on any of the details related to the incident report from that you filled out?
>
> A  More than likely, yes. As I recall, he is the one who pointed out that there was a problem with the dock--there was a

> problem with the dock, that--a mechanical issue with the dock.
>
> Q       How did you come to learn about that, sir, the mechanical issue?
>
> A       Well, I had heard a lot of maintenance personnel--when they were investigating, looking at it and so on, I overheard what they were looking at. They were pointing to things that--I am standing back and I am hearing all this talk, there is a problem with this, that, and so on.
>
> But I got the final word out of Dave Smith, saying that there was a mechanical issue involved.
>
> Q       So some part or component was broken?
>
> A       Right.
>
> Q       And so they had to fix something to address the underlying problem for that dockleveler?
>
> A       Yes, fix or--yes, correct.
>
> Q       Do you have any idea what was actually done to repair the unit?
>
> A       Sorry, I don't.

Deposition of Gerard Delgado [Doc. # 37-7] ("Delgado Depo.") at p. 39 line 3 through p. 40 line 7.

There are no documents relating to maintenance or repair of the subject dock leveler at the time of or after the plaintiff's accident, however. Correspondence [Doc. # 37-2] at pp. 10 and 11 of 18.

The plaintiff, in her Response [Doc. # 39], provides no additional or greater evidence of defect. To the contrary, she argues only that "the prior statements of Gary A. Pettit establish that there was a defect in the product sold by the Defendant" and that those statements "may be

7

admissible at trial pursuant to F.R.E. Rule 803 section 1 and Rule 804(a)(1). . . ." Response [Doc. # 39] at ¶¶8-9.

Ms. Fox's testimony that Mr. Pettit stated during his inspection of the dock leveler that "something-something-something had broken underneath" is hearsay. F.R.E. 801(c). Mr. Pettit is dead, The Denver Post Obituaries [Doc. # 37-2] at p. 6 of 18, and is not available to testify at the trial. F.R.E. 804(a)(4). Ms. Fox's recollection of Mr. Pettit's statement, so far as it goes, appears to be admissible pursuant to the hearsay exception set out in Rule 803(1), F.R.E., as a present sense impression.[1] See 5 Joseph M. McLaughlin, Weinstein's Federal Evidence §803.03[1] (2d ed. 2011)(stating that F.R.E. 803(1) creates a hearsay exception if (1)the declarant personally perceived the event described; (2) the declaration is a simple explanation or description of the event; and (3) the declaration and the event described are contemporaneous. A present sense impression is deemed trustworthy because (1) the statement and event are simultaneous, eliminating memory problems, and (2) there is little time for calculated misstatement).

But Mr. Pettit's statement is not sufficient to save the plaintiff's claim for strict product liability. In addition to evidence of a defect, which Mr. Pettit's statement provides, the plaintiff also must present some evidence that the product "was defective at the time it was sold by the defendant or left [its] control." CJI-Civ. 14:1 (2011) at ¶4; Kysor Industrial Corp. v. Frazier, 642 P.2d 908, 911(Colo. 1982)(stating that "[t]he burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured party; and

---

[1]No argument is made that the testimony of Mr. Delgado that he "got the final word out of Dave Smith, saying that there was a mechanical issue involved" in the failure of the dock leveler is admissible.

unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained"). The plaintiff has offered no evidence to establish this element of a strict product liability claim. Nor is the mere occurrence of an accident in connection with the use of a product sufficient to establish that the product was defective at the time it left the defendant's control. Id. at 911.

The Motion for Summary Judgment [Doc. # 37] is DENIED with respect to plaintiff's Second Claim for Relief alleging product liability for negligence and GRANTED with respect to the plaintiff's Sixth Claim for Relief alleging strict product liability.

IV.

Plaintiff's Fourth Claim for Relief is captioned "Product Liability Inadequate Warning or Instruction." Complaint [Doc. # 2] at p. 9. The claim is supported by the following allegations:

> 95. Defendant 4Front knew or, in the exercise of reasonable care, should have known of the risks posed by Plaintiff's use of the dock leveler.
>
> 96. Defendant 4Front knew or, in the exercise of reasonable care, should have known that the risk of harm or injury from the manner in which Plaintiff used the dock leveler is not obvious to a reasonable consumer.
>
> 97. The risks of harm or injury from the manner in which Plaintiff used the dock leveler were beyond contemplation of a reasonable consumer.
>
> 98. The risks of harm or injury from the manner in which Plaintiff used the dock leveler were not obvious to a reasonable consumer.
>
> 99. Defendant 4Front owed a duty to Plaintiff to warn of the risk of harm or injury associated with the manner in which Plaintiff used the dock leveler.
>
> 100. A product becomes defective and unreasonably dangerous if adequate warnings are not provided.

> 101. Defendant 4Front breached their duty by failing to use reasonable care to provide to Plaintiff adequate warnings of hte risks of injury or harm associated with the manner in which Plaintiff used the dock leveler.

Complaint [Doc. # 2] at p. 10.

The defendant does not address the plaintiff's Fourth Claim for Relief for product liability based on an inadequate warning or instruction. Consequently, the Motion for Summary Judgment [Doc. # 37] is DENIED with respect to that claim.

V.

IT IS ORDERED that the Motion for Summary Judgment [Doc. # 37] is GRANTED IN PART and DENIED IN PART as follows:

• GRANTED with respect to the plaintiff's Sixth Claim for Relief alleging strict product liability. At the conclusion of the case, the clerk of the court shall enter judgment in favor of defendant 4Front Engineered Solutions, Inc., and against the plaintiff on the plaintiff's Sixth Claim for Relief alleging strict product liability; and

• DENIED in all other respects.

Dated March 21, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge